# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| SHANNON LYNN GUEVARA,<br><br>    Plaintiff,<br><br>v.<br><br>COMMISSIONER OF SOCIAL<br>SECURITY,<br><br>    Defendant. | Case No.  1:24-cv-01420-SAB<br><br>ORDER AFFIRMING DECISION OF THE<br>COMMISSIONER OF SOCIAL SECURITY<br><br>(ECF Nos. 13, 15) |

Plaintiff Shannon Lynn Guevara ("Plaintiff") seeks judicial review of a final decision of the Commissioner of Social Security ("Commissioner") denying her application for disability benefits pursuant to the Social Security Act.  The matter is currently before the Court on the parties' briefs, which were submitted without oral argument.

Plaintiff requests the decision of Commissioner be vacated and the case be remanded for further proceedings, arguing that the decision below was not supported by substantial evidence. Specifically, Plaintiff argues that the Administrative Law Judge ("ALJ") erred in his analysis of Plaintiff's residual functional capacity, as well as his analysis of Plaintiff's subjective complaints regarding symptoms.

For the reasons explained herein, the Court will affirm the decision of the Commissioner.

/ / /

/ / /

1

## I.

## BACKGROUND

### A.    Procedural History

On May 26, 2022, Plaintiff filed an application for supplemental security income, alleging disability beginning May 26, 2022. (ECF No. 12, Administrative Record ("AR"), 17.) Plaintiff's application was initially denied on December 1, 2022, and denied upon reconsideration on March 7, 2023. (Id.) Plaintiff requested before a hearing before an ALJ. On May 7, 2024, Plaintiff, represented by counsel, appeared for a hearing in front of an ALJ. (Id.) Plaintiff and vocation expert ("VE") Michael Blankenship testified. (Id.) On June 4, 2024, the ALJ issued a decision concluding that Plaintiff was not disabled. (AR 31-32.) On October 1, 2024, the Appeals Council denied Plaintiff's request for review. (AR 1-5.)

### B.    The ALJ's Findings of Fact and Conclusions of Law

In the decision, the ALJ found that Plaintiff had not engaged in substantial gainful activity since May 26, 2022, the application date. (AR 19.) The ALJ found that Plaintiff had the following severe impairments: mood disorder, bipolar disorder, personality disorder, generalized anxiety disorder, post-traumatic stress disorder, agoraphobia, right shoulder degenerative joint disease/arthritis and impingement syndrome, cervical spine degenerative disc disease and radiculopathy, fibromyalgia, obesity, early lumbar spine facet arthropathy, sacroiliitis, left knee tendinitis, and mild left carpal tunnel syndrome. (Id.) However, Plaintiff did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed in impairments in 20 C.F.R. Part 404, Subpart P, Appendix 1. (AR 20.)

After considering the entire record, the ALJ found that Plaintiff had the residual functional capacity ("RFC") to perform light work as defined in 20 C.F.R. § 416.967(b) except she can lift/carry 20 pounds occasionally and 10 pounds frequently, sit for at least 6 out of 8 hours and stand/walk for about 6 out of 8 hours. Plaintiff could occasionally use her left lower extremity for pushing/pulling. She could occasionally perform climbing, stooping, kneeling, crouching, and crawling, and she could frequently balance. She could frequently use the right upper extremity for reaching in all directions, except overhead which she can do occasionally. She could

frequently use the bilateral upper extremities for handling, feeling, pushing/pulling, and fine fingering.  Plaintiff must avoid concentrated exposure to vibration and dangerous workplace hazards such as exposed moving machinery and unprotected heights.  Plaintiff could understand and remember simple instructions and maintain the concentration, persistence, and pace necessary to carry out simple, routine and rote tasks that require no more than occasional independent judgment or decision-making and can be learned from a short demonstration up to and including one month.  She should have no public interaction as part of any job duties.  She could adapt to supervisory critical feedback and interact appropriately with coworkers without excessively distracting them by behavior and was able to meet customary standards for dress and hygiene.  She was able to adapt to simple and infrequent changes and stresses in work duties and the work setting, arrange transportation as needed and independently set realistic goals and plans.  (AR 22-23.)

The ALJ then found that that Plaintiff had no past relevant work, she was 47 years old on the date the application was filed, and she had at least a high school education.  (AR 30.)  The ALJ discussed that transferability of job skills was not material to the determination of disability because Plaintiff did not have past relevant work.  (Id.)  Considering Plaintiff's age, education, work experience, and RFC, the ALJ found that there were jobs that existed in significant numbers in the national economy that Plaintiff could perform.  (Id.)  Accordingly, the ALJ concluded that Plaintiff had not been under disability, as defined by the Social Security Act, since May 26, 2022, the date the application was filed.  (AR 31.)

Plaintiff sought timely review of the Commissioner's decision in the federal courts.  (ECF No. 1.)  The parties consented to the jurisdiction of the United States Magistrate Judge.  (ECF Nos. 7, 8 , 9.)  Thereafter, the parties filed their briefs on the matter.[1]  (ECF Nos. 13, 15.)

---

[1] On December 1, 2022, the Supplemental Rules for Social Security became effective.  Rule 5 states, "[t]he action is presented for decision by the parties' briefs."  Fed. R. Civ. P. Appx. Rule 5.  The 2022 Advisory Committee noted that "Rule 5 states the procedure for presenting for decision on the merits a [42 U.S.C.] § 405(g) review action that is governed by the Supplemental Rules."  Fed. R. Civ. P. Appx. Rule 5 advisory committee note 2022.  Like an appeal, "the briefs present the action for decision on the merits.  This procedure displaces summary judgment or such devices as a joint statement of facts as the means of review on the administrative record."  Id.  The 2022 Advisory Committee unambiguously clarified that "Rule 5 also displaces local rules or practices that are inconsistent with the simplified procedure established by these Supplemental Rules for treating the action as one for review on the administrative record."  Id.  Here, Plaintiff filed a motion for summary judgment, which the Court will construe

## II.

## LEGAL STANDARD

### A.    The Disability Standard

To qualify for disability insurance benefits under the Social Security Act, a claimant must show she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Regulations set out a five-step sequential evaluation process to be used in determining whether a claimant is disabled. 20 C.F.R. § 404.1520;[2] Batson v. Comm'r of Soc. Sec. Admin., 359 F.3d 1190, 1194 (9th Cir. 2004). The five steps in the sequential evaluation in assessing whether the claimant is disabled are:

> Step one: Is the claimant presently engaged in substantial gainful activity? If so, the claimant is not disabled. If not, proceed to step two.
>
> Step two: Is the claimant's alleged impairment sufficiently severe to limit his or her ability to work? If so, proceed to step three. If not, the claimant is not disabled.
>
> Step three: Does the claimant's impairment, or combination of impairments, meet or equal an impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1? If so, the claimant is disabled. If not, proceed to step four.
>
> Step four: Does the claimant possess the residual functional capacity ("RFC") to perform his or her past relevant work? If so, the claimant is not disabled. If not, proceed to step five.
>
> Step five: Does the claimant's RFC, when considered with the claimant's age, education, and work experience, allow him or her to adjust to other work that exists in significant numbers in the national economy? If so, the claimant is not disabled. If not, the claimant is disabled.

Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1052 (9th Cir. 2006). The burden of proof is on the claimant at steps one through four. Ford v. Saul, 950 F.3d 1141, 1148 (9th Cir. 2020). A

as a brief in support of her position on whether the Court should affirm, modify, or reverse the decision of the Commissioner. 42 U.S.C. § 405(g).

[2] The regulations which apply to disability insurance benefits, 20 C.F.R. §§ 404.1501 et seq., and the regulations which apply to SSI benefits, 20 C.F.R. §§ 416.901 et seq., are generally the same for both types of benefits. Accordingly, while Plaintiff seeks only Social Security benefits under Title II in this case, to the extent cases cited herein may reference one or both sets of regulations, the Court notes these cases and regulations are applicable to the instant matter.

claimant establishes a *prima facie* case of qualifying disability once she has carried the burden of proof from step one through step four.

Before making the step four determination, the ALJ first must determine the claimant's RFC.  20 C.F.R. § 416.920(e).  The RFC is "the most [one] can still do despite [his or her] limitations" and represents an assessment "based on all the relevant evidence."  20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1).  The RFC must consider all the claimant's impairments, including those that are not severe.  20 C.F.R. §§ 416.920(e); 416.945(a)(2); Social Security Ruling ("SSR") 96-8p, 1996 WL 374184 (July 2, 1996).[3]  "[I]t is the responsibility of the ALJ, not the claimant's physician, to determine residual functional capacity."  Vertigan v. Halter, 260 F.3d 1044, 1049 (9th Cir. 2001); 20 C.F.R. §§ 404.1545(a)(1), 404.1546(c).

At step five, the burden shifts to the Commissioner, who must then show that there are a significant number of jobs in the national economy that the claimant can perform given her RFC, age, education, and work experience.  20 C.F.R. § 416.912(g); Lounsburry v. Barnhart, 468 F.3d 1111, 1114 (9th Cir. 2006).  To do this, the ALJ can use either the Medical Vocational Guidelines ("grids") or rely upon the testimony of a VE.  See 20 C.F.R. § 404 Subpart P, Appendix 2; Lounsburry, 468 F.3d at 1114; Osenbrock v. Apfel, 240 F.3d 1157, 1162 (9th Cir. 2001). "Throughout the five-step evaluation, the ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'"  Ford, 950 F.3d at 1149, quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir. 1995).

## B.    Standard of Review

Congress has provided that an individual may obtain judicial review of any final decision of the Commissioner of Social Security regarding entitlement to benefits.  42 U.S.C. § 405(g).  In determining whether to affirm, modify, or reverse an ALJ's decision, the Court reviews only those issues raised by the party challenging the decision.  See Lewis v. Apfel, 236 F.3d 503, 517 n.13 (9th Cir. 2001).  Further, the Court's review of the Commissioner's decision is a limited one;

---

[3] SSRs are "final opinions and orders and statements of policy and interpretations" issued by the Commissioner.  20 C.F.R. § 402.35(b)(1).  While SSRs do not have the force of law, the Court gives the rulings deference "unless they are plainly erroneous or inconsistent with the Act or regulations."  Han v. Bowen, 882 F.2d 1453, 1457 (9th Cir. 1989); see also Avenetti v. Barnhart, 456 F.3d 1122, 1124 (9th Cir. 2006).

the Court may not disturb the Commissioner's final decision unless it is based on legal error or the findings of fact are not supported by substantial evidence. 42 U.S.C. § 405(g); Reddick v. Chater, 157 F.3d 715, 720 (9th Cir. 1998). "[T]he threshold for such evidentiary sufficiency is not high." Biestek v. Berryhill, 587 U.S. 97, 103 (2019). Rather, "[s]ubstantial evidence is more than a mere scintilla, and means only such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Stiffler v. O'Malley, 102 F.4th 1102, 1106 (9th Cir. 2024), quoting Ford, 950 F.3d at 1154. In other words, "[s]ubstantial evidence is relevant evidence which, considering the record as a whole, a reasonable person might accept as adequate to support a conclusion." Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002), quoting Flaten v. Sec'y of Health & Human Servs., 44 F.3d 1453, 1457 (9th Cir. 1995).

Should the ALJ err, the Court will not reverse where the error was harmless. Stout, 454 F.3d at 1055-56. "An error is harmless only if it is 'inconsequential to the ultimate nondisability determination.'" Leach v. Kijakazi, 70 F.4th 1251, 1255 (9th Cir. 2023), quoting Lambert v. Saul, 980 F.3d 1266, 1278 (9th Cir. 2020). The burden of showing that an error is not harmless "normally falls upon the party attacking the agency's determination." Molina v. Astrue, 674 F.3d 1104, 1111 (9th Cir. 2012), quoting Shinseki v. Sanders, 556 U.S. 396, 409 (2009).

Finally, "a reviewing court must consider the entire record as a whole and may not affirm simply by isolating a specific quantum of supporting evidence." Hill v. Astrue, 698 F.3d 1153, 1159 (9th Cir. 2012), quoting Robbins v. Soc. Sec. Admin., 466 F.3d 880, 882 (9th Cir. 2006). Nor may the Court affirm the ALJ on a ground upon which he or she did not rely; rather, the Court may review only the reasons stated by the ALJ in his decision. Orn v. Astrue, 495 F.3d 625, 630 (9th Cir. 2007); see also Connett v. Barnhart, 340 F.3d 871, 874 (9th Cir. 2003). It is not this Court's function to second guess the ALJ's conclusions and substitute the Court's judgment for the ALJ's; rather, if the evidence "is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld." Ford, 950 F.3d at 1154, quoting Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005).

///

///

# III.

## DISCUSSION AND ANALYSIS

Plaintiff argues that the ALJ erred in three ways.  First, Plaintiff argues that the ALJ failed to develop the record by not obtaining an updated consultative opinion for Plaintiff's physical RFC.  (ECF No. 13, pp. 6-10.)  Second, Plaintiff argues that the ALJ did not properly evaluate Plaintiff's fatigue with regard to the RFC.  (Id. at pp. 10-11.)  Third, Plaintiff essentially argues that the ALJ erred in his analysis of Plaintiff's subjective complaints.  (Id. at pp. 11-14.)  The Commissioner opposes, arguing that substantial evidence supports the ALJ's analysis of Plaintiff's subjective complaints as well as the ALJ's formulation of the RFC.  (ECF No. 15.)  The Court agrees with the Commissioner.

The Commissioner observed that Plaintiff's second and third arguments collapse into one argument and addressed the arguments in the order of Plaintiff's subjective testimony and then the RFC determination.  (ECF No. 15, p. 4 n.2.)  The Court agrees with this this approach and will address all of Plaintiff's arguments using this framework.

### A.    Plaintiff's Subjective Complaints

For Plaintiff's subjective complaints, Plaintiff brings two arguments.  First, Plaintiff argues that the ALJ erred in his analysis of Plaintiff's subjective complaints because, in Plaintiff's view, the ALJ gave a general summary of the evidence without providing an explanation as to which portions of Plaintiff's testimony he rejected.  (ECF No. 13, p. 12-13.)  Second, Plaintiff argues that the ALJ misapplied the characterization of 'conservative treatment' as to Plaintiff's mental health treatment.  (Id. at pp. 13-14.)  The Commissioner opposes, arguing that the ALJ's analysis regarding Plaintiff's subjective complaints was supported by substantial evidence.  (ECF No. 15, pp. 4-9.)  The Court agrees with the Commissioner.

"The ALJ is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities."  Garrison v. Colvin, 759 F.3d 995, 1010 (9th Cir. 2014), quoting Andrews v. Shalala, 53 F.3d 1035, 1039 (9th Cir.1995).  As relevant here, where the ALJ "determines that a claimant . . . is not malingering and has provided objective medical evidence of an underlying impairment which might reasonably produce the pain or other symptoms she

alleges, the ALJ may reject the claimant's testimony about the severity of those symptoms only by providing specific, clear, and convincing reasons for doing so." Lambert, 980 F.3d at 1277, quoting Brown-Hunter v. Colvin, 806 F.3d 487, 488-89 (9th Cir. 2015). "Ultimately, the 'clear and convincing' standard requires an ALJ to show his work." Smartt v. Kijakazi, 53 F.4th 489, 499 (9th Cir. 2022). An ALJ must show their work by "identify[ing] the testimony [from a claimant] she or he finds not to be credible and . . . explain[ing] what evidence undermines that testimony." Lambert, 980 F.3d at 1277, quoting Treichler v. Comm. of Soc. Sec. Admin., 775 F.3d 1090, 1102 (9th Cir. 2014). Boilerplate statements and general summaries of the evidence, without more, are not enough. Id. at 1277-78. That said, an ALJ is not required "to perform a line-by-line exegesis of the claimant's testimony" or "draft dissertations when denying benefits." Id. at 1277.

While "an ALJ cannot insist on clear medical evidence to support each part of a claimant's subjective pain testimony when there is no objective testimony evincing otherwise, . . . [w]hen objective medical evidence in the record is *inconsistent* with the claimant's subjective testimony, the ALJ may indeed weigh it as undercutting such testimony." Smartt, 53 F.4th at 498 (emphasis in original). Indeed, "[c]ontradiction with the medical record is a sufficient basis for rejecting the claimant's subjective testimony." Carmickle v. Commissioner, Social Sec. Admin., 533 F.3d 1155, 1161 (9th Cir. 2008). "The standard isn't whether [a] court is convinced, but instead whether the ALJ's rationale is clear enough that it has the power to convince." Smartt, 53 F4th at 499.

The ALJ summarized Plaintiff's subjective testimony as follows:

> The claimant alleged in his Function Reports (Exhibits 3E; 8E) that her conditions affected her ability to work because she says that she is "scared to leave my house, anxious and panicked when around people/large crowds." (Exhibit 3E/4). She claimed, "My dizzy spells and panic attacks prevent me from lifting/transferring patients, body pains prevent me from standing for long periods of time" and her "shoulder impingement prevents lifting, reaching, pushing and pulling." (Exhibit 3E/4). She alleged "widespread inflammation that causes constant pain and makes it difficult to bend, reach and pick up heavy things." (Exhibit 8E/1). She alleged "vertigo, trouble remembering" and claimed her medications "cause dizziness, drowsiness, and an inability to concentrate or operate a motor vehicle." (Exhibit 8E/1) She

alleged her conditions affected her ability to perform all exertional and postural activities as well as reaching and using her hands. (Exhibit 3E/9; 8E/6).  She also alleged her conditions affected her memory, concentration, understanding, and ability to complete tasks, ability to follow instructions, and ability to get along with others.  (Exhibit 3E/9; 8E/6).

The claimant has alleged similar subjective complaints and functional limitations in her disability hearing testimony, which is fully considered in the determination of this decision but are not repeated her for the sake of economy.

The claimant testified she can only sit comfortably for five to ten minutes before needing to stand up or lay down with a pillow behind her back and elevating her legs.  She alleged it hurts her elbow to put a phone to her ear, and it hurts to open a car or house door.  She claimed a limited range of motion, that she cannot reach across a counter and is very limited in her ability reach overhead. She testified her pain level is 8-9/10 prior to take her pain medications and 5-6/10 after taking her pain medications.  She alleged her medication cause her to be sleepy and dizzy and cause "brain fog."  She testified she does not use an assistive device to walk (Hearing testimony).

The claimant testified her severe anxiety and panic disorder cause her to struggle being around crowds and people she does not know, but says she also has anxiety attack in her own home.  She says the panic attacks last twenty to thirty minutes and she will be in shock, rock back and forth and have trouble speaking.  She alleged this happens two to three times per week.  She says she will lay in bed and scream into her pillow as she waits for her medications to take effect.  She alleged doing very few activities of daily living, but acknowledges she took a day trip forty-five from her home in 2023 to visit a friend and participate in a picnic (Hearing testimony).

(AR 23-24.)  Following, the ALJ found that "[Plaintiff's] medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, [Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision."  (AR 24.)

The ALJ began his analysis of Plaintiff's testimony by observing that Plaintiff's statements regarding intensity, persistence, and limiting effects were overall inconsistent with the longitudinal medical record.  (Id.)[4]  Regarding Plaintiff's cervical spine degenerative disc disease and

---

[4] Preliminarily, the ALJ gave a caveat that there would be overlapping symptoms and effects from Plaintiff's musculoskeletal impairment and her fibromyalgia.  Thus, "[t]o the extent subjective complaints and objective findings do not correlate with the musculoskeletal diagnostic findings, the same subjective complaints and objective findings are considered as symptoms of the claimant's fibromyalgia.  However, regardless of the precise etiology of

radiculopathy, the ALJ found that the diagnostic findings and Plaintiff's medical treatment did not support greater physical functional limitations than what the ALJ found in his decision. (AR 25.) In support of this finding, the ALJ then gave a lengthy discussion of Plaintiff's relevant records. For example, the ALJ observed that a September 2022 Spurling test caused pain down Plaintiff's neck without radiation into the upper extremities. (Id.) Though an October 2022 electromyography and nerve conduction study of Plaintiff's upper extremities showed "bilateral C5-6, C6-7 paraspinal muscle tension and spasm," testing was unable to decipher if there was any denervation. (Id.) This same testing did not document any radiculopathy or similar finding emanating from the cervical spine. (Id.) The ALJ also discussed a November 2022 chiropractic visit. (Id.) Next, the ALJ observed that in a record from April 2024 regarding Plaintiff's cervical spine degeneration disc disease and radiculopathy, it was noted that Plaintiff's "degenerative disc diseased relatively mild for age, most pronounced C4-C5, C5-C6 with mild to moderate height loss and slight retrolisthesis with otherwise normal cervical alignment. (Id., quoting Exhibit 19F/1-2.) Moreover, the ALJ noted that the April 2024 record noted that there was "no degenerative narrowing of the central canal at any level, no significant neuroforaminal narrowing to predispose to nerve root impingement, and no focal disc herniation." (Id.)

The ALJ then discussed Plaintiff's complaints that implicated her lumbar spine facet arthropathy and sacroiliitis, finding that "[Plaintiff's] medical treatment do[es] not support greater physical functional limitations than those found within this decision." (Id.) For example, in September 2022, Plaintiff showed normal gait though a Spurling test caused pain down the back without radiation. (Id.) The ALJ then again discussed the November 2022 chiropractic record, observing that in that record, Plaintiff alleged "4/10 mid-back pain and 7/10 lower back pain with pain radiating down her legs, worsened by prolonged sitting and walking. (AR 26.) That said, a physical examination demonstrated a "significant loss of range of motion of the lumbar spine." (Id.) Heel and toe walk tests were negative, and a Kemp's test was "severe positive bilaterally for law back pain." (Id.) Plaintiff was thereafter treated with chiropractic adjustments to improve

_____

the claimant's symptoms and effects, the undersigned fully considers them singly and combination with all the claimant's impairments." (AR 24.)

joint motion and decreased joint fixation and trigger point therapy and myofascial pain release to decreased adhesions and spasms. (Id.)  In January 2023, Plaintiff alleged 8/10 back pain. (Id.)

Next, the ALJ observed that,

> At a December 2023 pain management visit, [Plaintiff] showed "moderate" tenderness of the paraspinal muscles at L4-L5 and L5-S1 with "decreased range of motion with respect to flexion and extension" and "increased pain" with range of motion. (Exhibit 13F/1).  Gaenslen's test exhibited pain the sacroiliac joint bilaterally as did the FABER test.  (Exhibit 13F/2). However, strength, reflexes, muscle strength and tone of her legs were normal throughout. (Exhibit 13F/1)  Light touch perception was also normal.  (Exhibit 13F/1).  Similar findings were made in March 2024.  (Exhibit 13F/4).  An April 2024 lumbar spine MRI showed only "early facet arthropathy" at L3-L4, L4-L5, and L5-S1, but these results were "within normal limits for age" and there was "no degenerative central canal, lateral recess or neuroforaminal narrowing to predispose to nerve root impingement."  (Exhibit 18F/2).  Taken as a whole, the undersigned find the diagnostic findings do not correlate with the claimant subjective symptoms.

(AR 26.)

"Regarding [Plaintiff's] mild left carpal tunnel syndrome, the objective medical record does not demonstrate greater physical functional limitations due to this impairment, considered singly and in combination with the claimant's other impairments, than those found within the residual functional capacity conclusion of this decision," followed by detailed discussion of the record evidence.  (AR 26-27.)  The ALJ discussed Plaintiff's records involving her fibromyalgia, physical therapy, and obesity.  (AR 27.)  Indeed, the ALJ found that "[Plaintiff] is found to be obese and her obesity reasonably contributed to pain symptoms and difficulties performing exertional and postural activities when considered in combination with her musculoskeletal impairment as well as her fibromyalgia."  (Id.)

Regarding Plaintiff's testimony regarding her mental impairments (*i.e.*, mood disorder, bipolar disorder, personality disorder, generalized anxiety disorder, post-traumatic stress disorder, and agoraphobia), the ALJ found that "these conditions have been reasonably well controlled with prescription medication and psychotherapy."  (Id.)  The ALJ then observed that "[Plaintiff] has not required the sort of medical treatment associated with disabling mental impairments, such as emergency room treatment or inpatient hospitalizations due to symptoms exacerbations despite

medical treatment and [Plaintiff's] medical treatment record does not document symptoms consistent with the claimant subjective allegations of mental functional limitations that prevent her from engaging in all substantial gainful activity." (Id.)  In support of this, the ALJ then engaged in another extensive discussion, this time of Plaintiff's mental health medical evidence.  (AR 27-28.) This included discussions of psychotherapy notes, mental status examinations, a telehealth visit, and a record relating to psychotherapy counseling.  (AR 28.)  In particular, the ALJ observed that Plaintiff generally reported that she tolerated her medication; Plaintiff appeared with a depressed, normal, or euthymic mood; and Plaintiff generally reported improved mood or stable mood.  (Id.) The ALJ also expressly incorporated his findings regarding his evaluation of Plaintiff's conditions with the "Paragraph B" criteria.  (Id.)  As to those findings, the ALJ found that, for purposes of his Paragraph B analysis, Plaintiff had a mild limitation in understanding, remembering, and applying information; and a moderate understanding in interacting with others; concentrating, persisting, or maintain pace; and adapting or managing oneself.  (AR 21.)

As evidenced above, the Court finds that Plaintiff's argument that the ALJ merely engaged in a summary of the medical evidence is without force.  Rather, the ALJ clearly identified the testimony he was rejecting, or rejecting in part, and gave a thorough discussion of the medical evidence that supported his findings.  To be sure, the ALJ engaged in a lengthy discussion of the medical record overall, yet this was clearly done in both an effort to establish what testimony from Plaintiff the ALJ found not credible and what testimony and medical evidence the ALJ found to be credible for the RFC determination.

Turning to Plaintiff's argument regarding the ALJ's characterization of Plaintiff's mental health treatment as "conservative treatment,"[5] the Court finds this is belied by the opinion.  To start, the Court notes that the ALJ did not characterize Plaintiff's mental health treatment as conservative in the opinion.  Rather, Plaintiff takes issue with the fact that the ALJ observed that there were no medical records involving emergency room treatment or inpatient hospitalizations because of mental health symptoms.  (AR 27.)  However, the ALJ also discussed in depth how

[5] Plaintiff makes this quasi-conservative treatment argument relating to only Plaintiff's mental health symptoms, not Plaintiff's physical symptoms.  (ECF No. 13, pp. 13-14.)  The Court thus limited itself to Plaintiff's argument.

Plaintiff responded to her medication over time, including times where Plaintiff appeared or felt depressed, normal, and euthymic. (AR 28.) The ALJ noted that Plaintiff herself reported that she was on a low dose of Klonopin, "Generally uses it when going on car rides." (Id.) Plaintiff also reported at times improvement in her mood and anhedonia. (Id.) Though Plaintiff reported poor sleep, she also reported that "Lamictal is helping her to keep her mood stable and for depression." (Id.)

Thus, the ALJ did not shy away from the bad or the good in Plaintiff's medical record with regard to her mental health. Rather, the ALJ gave a thoughtful and thorough discussion supporting his decision to reject the level of severity of Plaintiff's mental health symptoms. Moreover, the ALJ was allowed to consider how Plaintiff responded to her mental health with medication. See Wellington v. Berryhill, 878 F.3d 867, 876 (9th Cir. 2017) ("Such evidence of medical treatment successfully relieving symptoms can undermine a claim of disability."). And, as with her physical impairment testimony, the ALJ clearly credited some of Plaintiff's mental health testimony as evidenced by the RFC as well as the ALJ rejecting a portion of the state-agency medical consultants' opinions with regard to Plaintiff's limitation in interacting with others. (AR 28-29.)

Plaintiff's caselaw on conservative treatment is inapposite because the ALJ here neither characterized Plaintiff's mental health treatment as conservative nor did the ALJ simply discount Plaintiff's testimony because she was on psychiatric medications or only because she did not medical records from an emergency room or inpatient care.

In sum, the ALJ's analysis as to Plaintiff's testimony regarding subjective complaints "is clear enough that it has the power to convince." Smartt, 53 F4th at 499. The ALJ did not err.

## B.    The ALJ's RFC Determination

Regarding the RFC, Plaintiff brings two arguments. First, Plaintiff argues that when crafting the RFC, the ALJ had only opinions from state agency medical consultants that the ALJ determined to be unpersuasive. (ECF No. 13, p 8.) Considering this, Plaintiff argues that the ALJ should have obtained an updated consultative medical opinion; essentially, Plaintiff raises a duty to develop the record argument. (Id. at p. 9.) Second, Plaintiff argues that the ALJ did not adequately account for Plaintiff's claims of fatigue and lethargy in the RFC. (Id. at pp. 10-11.)

The Commissioner opposes, arguing again the substantial evidence supports the ALJ's RFC determination and that the duty to develop the record was not applicable. (Id. at pp. 9-13.) The Court agrees with the Commissioner.

When an ALJ calculates a claimant's RFC, the ALJ is tasked with determining "the individual's *maximum* remaining ability to do sustained work activities in an ordinary work setting on a **regular and continuing** basis, and the RFC assessment must include a discussion of the individual's abilities on that basis." SSR 96-8p, 1996 WL 374184, at *2 (emphasis in original). In other words, the "RFC does not represent the least an individual can do despite his or her limitations or restrictions, but the *most*." Id. (emphasis in original). An ALJ assesses an RFC "based on all of the relevant medical and other evidence." 20 C.F.R. § 404.1545(a)(3). This includes "any statements . . . provided by medical sources, whether or not they are based on formal medical examinations," as well as reviewing any "consultative examination(s)" and, where applicable, prior administrative medical findings ("PAMFs"). Id.

Under the Social Security Administration's 2017 revised regulations, "there is not an inherent persuasiveness to evidence from [government consultants] over [a claimant's] own medical source(s), and vice versa." Woods v. Kijakazi, 32 F.4th 785, 791 (9th Cir. 2022), quoting Revisions to Rules Regarding the Evaluation of Medical Evidence, 82 Fed. Reg. 5844, 5844, 2017 WL 168819 (F.R. Jan. 18, 2017). "The most important factors" that the agency considers when evaluating the persuasiveness of medical opinions are "supportability" and "consistency." Id., quoting 20 C.F.R. § 404.1520c(a). Supportability means the extent to which a medical source supports the medical opinion by explaining the "relevant . . . objective medical evidence." 20 C.F.R. § 404.1520c(c)(1); 20 C.F.R. § 416.920c(c)(1). Consistency means the extent to which a medical opinion is "consistent . . . with the evidence from other medical sources and nonmedical sources in the claim." 20 C.F.R. § 404.1520c(c)(2); 20 C.F.R. § 416.920c(c)(2). With that said, it remains for "the ALJ to determine credibility, resolve conflicts in the testimony, and resolve ambiguities in the record." Lambert v. Saul, 980 F.3d 1266, 1277 (9th Cir. 2020), quoting Treichler, 775 F.3d at 1098.

"The revised regulations recognize that a medical source's relationship with the claimant is

still relevant when assessing the persuasiveness of the source's opinion." Woods, 32 F.4th at 792, citing 20 C.F.R. § 404.1520c(c)(3). Therefore, "an ALJ can still consider the length and purpose of the treatment relationship, the frequency of examinations, the kinds and extent of examinations that the medical source has performed or ordered from specialists, and whether the medical source has examined the claimant or merely reviewed the claimant's records." Id., citing 20 C.F.R. § 404.1520c(c)(3)(i)-(v). That said, "the ALJ no longer needs to make specific findings regarding these relationship factors." Id.

Here, the ALJ first found that the state-agency consultative opinions did not have the benefit of Plaintiff's most recent treatment records for her fibromyalgia, which demonstrated pain symptoms, loss of range of motion, and objective findings of diminished strength of the lower extremities. (AR 28-29.) The ALJ then found that the state-agency consultative opinions did not adequately consider Plaintiff's cervical spine impairment, carpal tunnel syndrome, among other musculoskeletal impairments, as contributing to significant physical functional limitations. (AR 29.) The ALJ thus found these opinions "unpersuasive regarding physical functional limitations and supports the conclusion the claimant is further limited to reduced range of light exertional work consistent with the residual functional capacity conclusion of this decision." (Id.) Based on this, Plaintiff suggests that (a duty to develop the record was triggered and) the ALJ erred by not ordering a subsequent consultative medical exam. The Court is not persuaded.

"The claimant has the burden of proving that she is disabled." Smolen v. Chater, 80 F.3d 1273, 1288 (9th Cir. 1996). However, "[t]he ALJ always has a 'special duty to fully and fairly develop the record and to assure that the claimant's interests are considered . . . even when the claimant is represented by counsel.'" Celaya v. Halter, 332 F.3d 1177, 1183 (9th Cir. 2003), quoting Brown v. Heckler, 713 F.2d 441, 443 (9th Cir. 1983). "[I]t is incumbent upon the ALJ to scrupulously and conscientiously probe into, inquire of, and explore for all the relevant facts. [The ALJ] must be especially diligent in ensuring that favorable as well as unfavorable facts and circumstances are elicited." Id., quoting Higbee v. Sullivan, 975 F.2d 558, 561 (9th Cir. 1992). Further, the ALJ's duty to develop the record fully is heightened where the claimant may be mentally ill and thus unable to protect his own interests. Tonapetyan v. Halter, 242 F.3d 1144,

15

1150 (9th Cir. 2001), citing Higbee, 975 F.2d at 562.

The Ninth Circuit has explained that ambiguous evidence, or the ALJ's own finding that the record is inadequate to allow for proper evaluation of the evidence, triggers the ALJ's duty to "conduct an appropriate inquiry." Tonapetyan, 242 F.3d at 1150 (quoting Smolen, 80 F.3d at 1288). "The ALJ may discharge this duty in several ways, including: subpoenaing the claimant's physicians, submitting questions to the claimant's physicians, continuing the hearing, or keeping the record open after the hearing to allow supplementation of the record." Id. (citations omitted). Similarly, the regulations provide the ALJ may order further consultative examination to "resolve an inconsistency in the evidence or when the evidence as a whole is insufficient to support a determination or decision." See 20 C.F.R. § 416.919a. Examples of situations under which further developing the record may be required include when the additional evidence needed is not contained in the records of the claimant's medical sources, and when highly technical or specialized medical evidence not available from the claimant's medical sources is needed. 20 C.F.R. § 416.919a(b). Once the duty to further develop the record is triggered, failure to do so constitutes reversible error. See Tonapetyan, 242 F.3d at 1150-51.

Here, the central inquiry into whether an ALJ's duty to develop the record was triggered is determining whether the record is ambiguous or inadequate to allow for proper evaluation of the evidence. Tonapetyan, 242 F.3d at 1150. Critically, and not to be conflated, "[t]he ALJ's duty to develop the record does not shift the burden of producing medical evidence from the [p]laintiff to the agency." Schwartz v. Comm'r of Soc. Sec. Admin., No. 2:24-cv-01091-JAT, 2024 WL 4764453, at *3 (D. Ariz. Nov. 13, 2024); see 20 C.F.R. § 404.1512(a)(1).

Plaintiff has not articulated how the record was either ambiguous or incomplete, nor is it readily apparent to the Court. Instead, Plaintiff seemingly seeks to have an updated state-agency consultative opinion because the opinions in question did not have Plaintiff's most recent treatment for fibromyalgia. Yet, simply because later records were obtained does not necessarily make the record ambiguous or incomplete. Indeed, the ALJ identified the records he relied upon in determining that these opinions were unpersuasive. (AR 29, citing Exhibits 12F, 13F, 16F/30, 19F/1-2, and 4F/21.) Thus, the record does not appear to have been incomplete in that regard, and

Plaintiff does not articulate how this latter record evidence created any ambiguity in the record.[6]

Accordingly, the Court finds that the ALJ's duty to develop was not triggered. The ALJ did not err in his rejection of the state agency consultative opinions without also ordering a subsequent opinion.

Plaintiff also makes a linguistic argument on this front, which is likewise without merit. Plaintiff first identifies the following finding from the ALJ: "the undersigned finds DDS [state agency] opinions unpersuasive regarding physical functional limitations and supports the conclusion the claimant is further limited to reduced range of light exertional work consistent with the residual functional capacity conclusion of this decision." (AR 29.) Plaintiff asserts that this demonstrates that the ALJ had impermissibly already assessed the RFC, placing the cart before the horse. The Court disagrees. Though not eloquent prose, the Court finds that the ALJ's meaning is clear. Taking the finding at face value, the ALJ first rejected certain aspects of the state-agency opinions because they opined that Plaintiff had less severe (or no) symptoms as to certain aspects of Plaintiff's physical functioning because of the most recent treatment records. Yet, the ALJ also found that, to the extent it did not reject the opinions, the opinions supported the finding that Plaintiff should be limited to a reduced range of light exertional work.[7]

Plaintiff's caselaw is again inapposite and unpersuasive. The ALJ did not seemingly calculate the RFC before considering the opinions of the state-agency opinions. This is belied by the fact that the ALJ crafted a more restrictive physical RFC based on the most recent treatment records. Moreover, as explained above, the ALJ explained exactly why he discounted the state-agency opinions.

Turning to fatigue and lethargy, Plaintiff argues that while the ALJ acknowledged that Plaintiff reported fatigue, the ALJ provided no analysis as to how it impacted her RFC. Plaintiff also mentions her hearing testimony when she stated she battled "brain fog." (AR 58.) The Court

---

[6] The Court has previously rejected the proposition that an ALJ be required to always obtain a comprehensive consultative opinion in every case before rendering an RFC. Scott T. C. v. Commissioner of Social Security, No. 1:23-cv-01776-SAB, 2025 WL 227288 (E.D. Cal. Jan. 17, 2025). To the extent that Plaintiff raises this version of this argument in passing here, (see ECF No. 13, p. 10), the Court rejects that argument for the reasons stated in Scott T.C.

[7] Regardless, the Court finds that any linguistical error here was harmless.

is not persuaded.

Though the ALJ did not use the words fatigue, the ALJ identified testimony and symptoms that encompassed this allegation.  For example, the ALJ identified that Plaintiff alleged that she had "dizzy spells, and "body pains [that] prevent me from standing for long periods of time." (AR 23.)  The ALJ also identified Plaintiff's allegation that she experiences "vertigo" and has "trouble remembering," in addition to that her medications "cause dizziness, drowsiness, and an inability to concentrate or operate a motor vehicle." (Id.)  "Plaintiff also alleged her conditions affected her memory, concentration, understanding, and ability to complete tasks, ability to follow instructions, and ability to get along with others." (Id.)  The ALJ then explicitly identified that Plaintiff alleged that her "medication cause[s] her to be sleepy and dizzy and cause 'brain fog.'" (AR 24.)  The ALJ also expressly incorporated Plaintiff's hearing testimony regarding similar subjective complaints.  (AR 23.)

The Court finds that, for the reasons stated in the Section III(A) above, the ALJ reasonably discounted the severity of the above testimony that directly bears on fatigue and brain fog.  See Lambert, 980 F.3d at 1277 (An ALJ need not perform a line-by-line exegesis of [a] claimant's testimony.").  In any event, any such error was harmless.  Fatigue appears to overlap with the above testimony the ALJ either partially or wholly rejected, and Plaintiff did not really contend with this fact in her brief.  Outside general protests of error, Plaintiff does not otherwise identify how any error here would have been harmful.  Leach, 70 F.4th at 1255.

Therefore, the Court finds that the ALJ did  not err in his assessment of Plaintiff's RFC.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

**IV.**

**CONCLUSION AND ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that the decision of the Commissioner of Social Security is AFFIRMED.  It is FURTHER ORDERED that judgment be entered in favor of Defendant Commissioner of Social Security and against Plaintiff Shannon Lynn Guevara.  The Clerk of the Court is directed to CLOSE this action.

IT IS SO ORDERED.

Dated:   **January 29, 2026**                                                  

STANLEY A. BOONE
United States Magistrate Judge